CARLOS DURÁN ET AL., Plaintiffs and Appellees, *v.* NICOLÁS GARCÍA TORRES, ETC., Defendants and Appellants.

No. 42.        Decided December 20, 1966.

*Rafael S. Fuentes* and *José Pérez Rodríguez* for appellants. *Benjamín Ortiz* for plaintiffs-appellees.

Second Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Santana Becerra, Mr. Justice Blanco Lugo, and Mr. Justice Ramírez Bages.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

By deed No. 13 executed before Notary Juan J. Ramírez Albite, on October 15, 1953, plaintiff-appellee Carlos Durán bought from defendant-appellant Nicolás García Torres a tract of land situated in ward Las Cuevas in Trujillo Alto, which on said date was recorded in the Registry of Property as property No. 1100 of said municipality and having an area of 1489 square meters. In the description of the property sold it was stated that according to a survey made the correct area was 1.75 cuerdas. The price stipulated was $3,500 of which amount $1,000 were paid upon execution of the deed deferring the payment of the remainder for six months.

". . . if within said period the vendors institute the necessary action for a dominion title proceeding and they guarantee the registration of the rest of the area previously described, that is, five thousand three hundred eighty-nine and twenty hundredths square meters (5,389.20 sq. m.) in the corresponding Registry of Property."

"The contracting parties agree that the total amount of the deferred price shall earn interest at the rate of eight percent (8%) annually for the period of six months starting from the date of this execution . . . provided that if upon expiration of the six-month period agreed upon the vendors have not terminated the transaction of the proceedings necessary to attain the registration of the remainder not recorded, said period of six months may be extended for three additional months with the previous agreement and consent of the executing parties, the purchaser being exonerated from the payment of interest for

the term of the extension granted or any other subsequent term after the six months."

Relying on the fact that vendor García could not attain, within the six-month period or the three additional months, the registration of the excess in area, purchaser Durán, on October 14, 1955, brought an action to determine that he was thereby exonerated from the payment of the deferred payment.[1] The defendant answered and filed a counterclaim for the deferred price and the interest accrued. As defense he adduced that the excess area was already recorded. The trial court favored the interpretation of the contract proposed by the plaintiff and rendered judgment in his favor. We decided to review it.

In essence, what is required in the case at bar is the interpretation of the intention of the parties. Probably the only point on which we agree with the trial court is its premise that the provisions of the contract are ambiguous and that they could have been expressed more clearly. However, the conclusion of the trial judge is grounded on disquisitions of the nature of the conditions—resolutory and suspensive—of the pact as to the deferred price, with absolute lack of knowledge of the contemporaneous and subsequent behavior of the parties as it appears from the evidence and the interrelation of the two clauses copied at the beginning of this opinion.

This leads us to make a review of the steps taken by the applellant-vendor to attain the registration of the excess area. At his request, by the month of October 1953, a survey map of the parcel had already been made which showed an area of 6,609.56 square meters, equivalent to 1.6816 cuer-

---

[1] There was accumulated a claim of $8,000 for alleged damages suffered which was dismissed by the trial court. Plaintiff did not appeal from this pronouncement of judgment.

das.[2] Within the six months from the date of the contract, on December 30, 1953, he obtained a statement of the courses and lengths of an adjoining property of Frank Zorrilla; on February 3, 1954, he obtained the approval of two other adjoining owners, Frank Coll Carpintero and Gaspar González; and on the following March 25th he executed a deed of rectification of area—deed No. 27 of February 25, 1954, before Notary José R. Vélez Torres—which was presented for registration one month later, an entry being made by the Registrar on April 7 which reads: "After examining another document, this document is recorded only as to the area of 1786.80 sq. m. which includes the 20% provided by the law . . . and denied as to the difference of 4,822.76 sq. m. . . ." Therefore we can see how the vendor, within the period of six months, had attained the registration of an excess of 297.80 square meters, it being only necessary to establish by the dominion title proceeding the remaining excess area.[3] To attain it, he immediately resorted to court action and on April 9 he instituted a dominion title proceeding. On April 21 the Planning Board appeared by brief stating that its intervention was unnecessary.[4] The edicts summoning the adjoining owners and the former owners were published on April 26, May 26, and June 27, 1954 and the period of 60 days granted for their appearance expired on August 26. The hearing was held on August 27. Not until March 8, 1955 does the Secretary of Justice appear in record on behalf of the Secretary of Public Works—on the north, one of the boundaries is state highway No. 23—

---

[2] The apparent discrepancy between the area of 1.6816 cuerdas and that of 1.75 cuerdas appearing in the deed of sale can be explained because the latter appeared in the previous titles.

[3] *García* v. *Registrar*, 71 P.R.R. 187 (1950); *P.R. Aqueduct Service* v. *Registrar*, 70 P.R.R. 216 (1949); *Rodríguez* v. *Registrar*, 68 P.R.R. 620 (1948); *Land Authority* v. *Registrar*, 62 P.R.R. 483 (1943).

[4] See § 24A added to the Planning Act by Act No. 434 of May 14, 1951, 23 L.P.R.A. § 26.

stating that he had no objections to the petition. The order establishing the excess of 4,822.76 was entered on March 14, 1955. On July 12, 1955 an amended order was entered declaring as justified the dominion of the excess in favor of Durán[5] which was finally recorded on July 20, 1955. Promptly, on August 9, Durán mortgaged the parcel where there was a building constructed by him, to secure a loan of $12,000 principal and other accessory credits.

The relation we have made of all the proceedings and steps which culminated in the registration of the excess area reveals, in our opinion, that the appellant-vendor acted with all possible diligence within the circumstances. The strict interpretation in the sense that the period of six months was fixed in order that within that period, not only the dominion title proceeding be filed but also the excess area be effectively recorded, is not favored by experience, since the periods then required by § 395 of the Mortgage Law[6] practically consumed the period fixed, and, besides, petitioner had no control over the hearings required by the Planning Board and the Secretary of Public Works. It is also at vari-

---

[5] In spite of the fact that in the original order it was stated that "petitioner [García] as well as the former owners of the excess area set forth, have been possessing it as owners for over thirty years, quietly, publicly, peacefully, in good faith, and without any interruption whatsoever" an examination of the evidence at the hearing showed that this fact was not completely established. Apparently, persons who were approached by Durán to negotiate loans with mortgage guaranty over the parcel raised objection, and therefore, Durán intervened in the proceeding, and at a new hearing the evidence on the matter was introduced, and the amended order of July 12, 1955 was then obtained.

[6] Not until the approval of Act No. 71 of June 18, 1957 (Sess. Laws, p. 165) was it provided that the edicts to summon the unknown persons who might be prejudiced by the record shall be published thrice for a period of fifteen days, and that the period within which the summoned interested persons may appear in court was reduced from 60 to 40 days from the date of publication of the last edict. See *Pietri* v. *Registrar*, 20 P.R.R. 205 (1914) where it was decided that the period of sixty days prescribed for the admission of proofs also governed the citation of unknown persons who may be prejudiced by the recording.

ance with a joint analysis of the two clauses already cited which were evidently interrelated. Their strict interpretation leads to a more logical result, that is, that the proceedings to attain the registration of the excess area had to be instituted within the six months and if they were not ultimated within the three additional months "or during any other period subsequent to six months" the obligation of payment of interest ceased. It is extremely significant that Durán accepted not having paid interest at any time and that he resorts to judicial action upon being required to pay the deferred price when the registration sought had already been attained for several weeks. If the intention of the parties to obtain registration was within the term fixed, reference to the initiation of the proceedings was unnecessary; it only sufficed to "guarantee" the same. In the following clause the parties refer to the "termination" of the proceedings. Furthermore, if the term of nine months was fixed and unalterable, how could it be explained that the parties, in agreeing that no interest be paid during a specific term until the termination of the proceedings to attain the registration, refer to "the term of extension granted or *any subsequent term after the six months*"? All this leads us to the inescapable conclusion that the responsibility assumed by the vendor was that of attaining the registration and in case the proceedings took more than six months, the purchaser was exonerated from the payment of interest on the deferred price for the term in excess of said six months.

By virtue of the foregoing the judgment rendered by the Superior Court, San Juan Part, on September 5, 1958[7] will be reversed and, instead, the complaint dismissed and the counterclaim sustained, and accordingly, plaintiff-appellee will be ordered to pay defendant-appellant the deferred price

---

[7] It was not until March 10, 1964 that the preparation of the transcript of evidence was ordered; it was filed on March 1, 1966; the petition was submitted on August 7, during the recess of this Court.

and interest at the agreed rate of 8% annually until full payment, except for the period comprised between the date of expiration of the six-month period and that of the registration of the excess area. He will also be ordered to pay costs, including those incurred in the prosecution of the present appeal, and $300 for attorney's fees.